**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SEAN GOTTLIEB,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL STUDENT LOAN DATA SYSTEM, *et al.*,<br><br>Defendants. | ) | Civil Action No. 24 -cv- 3644 (TSC) |

**MEMORANDUM OPINION**

This matter is before the court on Defendants' Motion for Summary Judgment, ECF No. 70. For the reasons discussed below, the motion is GRANTED.

## I. BACKGROUND

Plaintiff brought this action against the National Student Loan Data Service ("NSLDS") and the United States Department of Education ("Education") under the Administrative Procedure Act ("APA"), *see* 5 U.S.C. §§ 701 *et seq*. The court previously denied Defendants' motion to dismiss the complaint, as amended, concluding that Plaintiff has standing to sue and adequately states an APA claim. *See Gottlieb v. Nat'l Student Loan Data Sys.*, No. 24-cv-3644 (TSC), 2025 WL 4783173 (D.D.C. Nov. 21, 2025).

The central question in this civil action is whether Plaintiff has reached his lifetime limit for student loans. Plaintiff alleges the NSLDS "improperly calculated [his] student loan totals[.]" 2d Am. Compl. (ECF No. 28) ¶ 17; *see* Compl. (ECF No. 1) at 6. He opines that capitalized interest is included in the calculation erroneously, *see* Compl at 6; 2d Am. Compl. ¶ 6, and had it been omitted, he would be "eligible for $24,000 more aid before [he] reach[es] the aggregate loan

limit," Compl. at 6. Plaintiff deems arbitrary and capricious Defendants' conclusion that he is ineligible for additional loans. *See id.*; 1st Am. Compl. (ECF No. 18) ¶¶ 5-9; 2d Am. Compl. ¶¶ 17-18; Pl. Opp. MSJ (ECF No. 72) ¶ 2.

Defendants contend that Plaintiff has reached his loan limit of $224,000 and therefore is not eligible for additional loans, and that Plaintiff has failed to show that their actions were arbitrary and capricious. *See* Defs. Mem. (ECF No. 70-2) at 2-3, 8.

## II. LEGAL STANDARDS

### A. Summary Judgment in an APA Case

Defendants move for summary judgment under Federal Rule of Civil Procedure 56, pursuant to which the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) does not apply to claims seeking APA review, however, "because of the court's limited role in reviewing the administrative record." *Fulbright v. McHugh*, 67 F. Supp. 3d at 81, 89 (D.D.C. 2014) (quoting *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013)); *see Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006). Instead, "summary judgment serves as 'the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" *Amica Ctr. for Immigrant Rights v. Exec. Off. for Immigr. Rev.*, 822 F. Supp. 3d 119, 139–40 (D.D.C. 2026) (quoting *Cottage Health Sys. v. Sebelius*, 631 F. Supp. 2d 80, 90 (D.D.C. 2009)), *appeal dismissed*, No. 26-5156, 2026 WL 2582126 (D.C. Cir. Aug. 17, 2026); *see Coe*, 968 F. Supp. 3d at 240. "Rather than resolving factual issues, the district court's role in reviewing agency action 'is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Bates v. Donley*, 935 F. Supp. 2d 14, 22–23

(D.D.C. 2013) (quoting *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007)); *see Ass'n of Private Sector Colleges & Universities v. Duncan*, 110 F. Supp. 3d 176, 184 (D.D.C. 2015), (quoting *Univ. of Mass. v. Kappos*, 903 F. Supp. 2d 77, 84 (D.D.C. 2012)), *aff'd*, 640 F. App'x 5 (D.C. Cir. 2016).

"Section 706 of the APA directs a court evaluating an agency action to review the whole record or those parts of it cited by a party," *Conservation Force v. Salazar*, No. 10-cv-1262 (BJR), 2012 WL 11947683, at *2 (D.D.C. Feb. 6, 2012) (citing 5 U.S.C. § 706 and *Ctr. for Auto Safety v. Fed. Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992)) (internal quotation marks omitted). "Review of agency action under the APA is generally limited to the administrative record, which encompasses the materials that were before the agency when it made the challenged decision." *Singh v. Noem*, No. 1:24-cv-0438, 2025 WL 1419538, at *3 (W.D. Mich. May 6, 2025) (citing *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 196–97 (D.D.C. 2005)); *see Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) ("[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'") (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (providing that district court review of agency decision is "based on the full administrative record that was before the Secretary at the time he made his decision"), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). Thus, ordinarily, "contentions made in a later-drafted affidavit or declaration prepared for purposes of litigation" are not considered. *Bldg. Indus. Ass'n of Superior California v. Babbitt*, No. 95-cv-0726 (PLF), 1999 WL 33326722, at *4 (D.D.C. Mar. 31, 1999) (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1984)); *see Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 195–97

(D.D.C. 2006) ("Because the court's review is confined to the administrative record at the time of the agency's decision, it may not include 'some new record made initially in the reviewing court.'") (citing *Ctr. for Auto Safety*, 956 F.2d at 314 (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam))). However, "if . . . there was such failure to explain administrative action as to frustrate effective judicial review, the remedy was . . . to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." *Camp*, 411 U.S. at 142–43; *see Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) (stating the court "may not supply a reasoned basis for the agency's action that the agency itself has not given," and "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned").

**B. "Arbitrary and Capricious"**

"To state a proper claim under the APA, a plaintiff must allege facts that, if true, plausibly establish that the agency action is arbitrary and capricious." *Blanchett v. DeVos*, 490 F. Supp. 3d 26, 32 (D.D.C. 2020) (citing *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 284 (D.C. Cir. 2000)) (additional citations omitted). "[A]n an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Delaware Riverkeeper Network v. FERC*, 753 F.3d 1304, 1313 (D.C. Cir. 2014) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)).

## III. DISCUSSION

### A. Administrative Record

"In cases involving the judicial review of administrative agency actions . . . , the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first." LCvR 7(n)(1). In addition, agency "counsel shall provide the Court with an appendix containing copies of those portions of the administrative record that are cited or otherwise relied upon in any memorandum in support of or in opposition to any dispositive motion." *Id*. "Unless so requested by the Court, the entire administrative record shall not be filed with the Court." *Id*.

In support of their motion, Defendants initially presented the declaration of Leah Santore (ECF No. 70-3), a Management and Program Analyst, and two exhibits (ECF No. 70-3 at 6-7). Ms. Santore "certif[ied] that, for purposes of the relevant facts in this case, [she is] an official custodian of the United States Department of Education records," Santore Decl. ¶ 3, and the exhibits "are authentic copies of the National Student Loan Data System . . . records relative to the Plaintiff Sean Alan Gottlieb, based on his social security number and birthdate," *id.*

On October 9, 2026, Defendants filed an Appendix (ECF No. 85) along with certification by Education's Acting General Counsel that the Gottlieb Administrative Record (ECF No. 85-2) contains "true copies of the Plaintiff Sean Gottlieb's student loan records pertaining to the U.S. Department of Education's . . . final agency decision that he has reached his aggregate lifetime

maximum loan limit, maintained by Education in the regular course of business." Certification of True Copy (ECF No. 85-1) at 1.[1]

Plaintiff strenuously objects both to the Santore Declaration and the Gottlieb Administrative Record. With respect to the declaration, Plaintiff argues that it "does not purport to be a contemporaneous record of the agency's decision-making process," as it "was created . . . specifically for use in this litigation to explain and defend the agency's calculation methodology." Pl. Opp. MSJ ¶ 17. According to Plaintiff, the declaration "is a textbook example of post-hoc rationalization," *id.* ¶ 16, which "appears nowhere in the contemporaneous record," *id.* ¶ 21.

By "contemporaneous record," *id.*, Plaintiff refers to the email he received from NSLDS, which included the following passage:

> I can assure you that our code is doing nothing incorrectly and capitalized interest is not being added to the aggregate for any consolidation loan. The issue is that NSLDS can't find a link between their consolidation loans and their consolidated loans (PN status). The respective dates are too far apart for us to calculate a link between the open consolidation loans . . . and we don't have any valid reported linkages in our system . . . . Because we can't find an association, we ignore the consolidated loans and take the OPB of the consolidation loan at face-value and reflect it in the recipient's undergrad totals.

---

[1] Plaintiff makes much of Defendants' failure to file a certified list of the administrative record's contents with its motion to dismiss and motion for summary judgment, *see, e.g.*, Pl. Opp. to App'x (ECF No. 86) at 14, and failure to file timely a certified administrative record, *see, e.g.*, Pl. Opp. MSJ (ECF No. 72) at 14-18. Such procedural error alone is not a valid basis to deny Defendants' summary judgment motion. *Cf. Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting "jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities"). For this same reason, the court denies Plaintiff's motion for default judgment (ECF No. 81) for Defendants' failure to file an answer within 14 days of the denial of their motion to dismiss. Nothing in the Federal Rules of Civil Procedure prevents Defendants from filing a dispositive motion before their answer would have been due, and even Plaintiff acknowledges that a party may file a summary judgment motion at any time until 30 days after the close of discovery. *See* Pl. Opp. MSJ at 19 (citing Fed. R. Civ. P. 56(b)).

Compl. at 6; *see* 1st Am. Compl. ¶ 5; 2d Am. Compl. ¶ 16. Plaintiff contends that "[t]his email – hardly a reasoned agency decision – is the entirety of the contemporaneous administrative record concerning the calculation methodology," Pl. Opp. MSJ ¶ 23, and it "contains no explanation of the methodology, no citation to regulatory authority, and no application of the methodology to Plaintiff's circumstances," *id.* ¶ 27, and instead "simply states a conclusion," *id.* He contends "[t]he agency never issued a written decision, never provided findings of facts, and never articulated a rational connection between the evidence and its conclusion." *Id.* ¶ 30. Plaintiff insists that Defendants must "produce the complete certified administrative record – including all loan disbursement dates, amounts, and promissory notes – before any further dispositive motion practice proceeds." *Id.* ¶ 7; *see generally* Supp. Auth. Regarding Promissory Notes as Required Evidence (ECF No. 82).

Plaintiff dismisses the Gottlieb Administrative Record as a mere set of "screenshots of NSLDS 'View Loan Details' screens," Pl. Opp. to App'x (ECF No. 86) at 3, which "appear to have been generated by someone logging into NSLDS and taking a screenshot or printing the screen," *id.* He considers NSLDS "a reporting and display system," *id.* at 4, not "the system of record for loan origination," *id.*, and thus does not include original promissory notes, borrower's signatures, loan terms, disbursement records, and other information necessary to "prove the truth of the underlying loan[s'] existence, validity, [and] amount[s]," *id.*; *see id.* at 5-7, 12. Further, Plaintiff argues, the Gottlieb Administrative Record is not the administrative record in existence at the time Education made its determination. *See, e.g., id.* at 7, 14. "A report generated after the decision . . . cannot, solely by virtue of being filed in court, establish what the agency considered when it made the earlier decision." *Id.* at 7. Plaintiff also declares that the Gottlieb Administrative Record is not a complete record. In his view, Defendants produce "selected portions" which they cite or on

which they rely, *see id*. at 14 (emphasis removed), and omit any materials contrary to their position, *see id*. at 15.

Plaintiff fails to support his arguments. He does not demonstrate, for example, that information retrieved for purposes of this motion differs from the information before Education at the time it determined Plaintiff's loan eligibility. Defendants certify that the Gottlieb Administrative Record contains all the records considered in making the final agency decision, and Plaintiff's speculation alone as to whether the record is complete or contemporaneous does not prove otherwise. *Cf. Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 195 (D.D.C. 2006) (noting agency action under review is "entitled to a presumption of regularity.") (citation omitted). And Plaintiff's insistence that all underlying loan documentation must be produced falls flat. Plaintiff sues NSLDS and Education, and their submissions address the central issue in this case – the calculation of Plaintiff's aggregate outstanding principal balance for purposes of determining his eligibility for additional student loans. Defendants have complied with their obligation to provide copies of those portions of the administrative record cited or relied upon in their summary judgment motion, and Plaintiff fails to demonstrate that documentation for every student loan relevant to determining his loan limit – the outstanding principal balances of which are reflected in NSLDS data – need be produced.

**B. Calculation of Plaintiff's Aggregate Outstanding Principal Balance**

By regulation, Defendants may not factor capitalized interest in determining a borrower's student loan limits. Aggregate limits for *subsidized* loans "excluding the amount of capitalized interest may not exceed . . . $65,500 in the case of a graduate or professional student, including loans for undergraduate study." 34 C.F.R. § 685.203(d)(2). Aggregate limits for *unsubsidized* loans "excluding the amount of capitalized interest[] may not exceed . . . [f]or a graduate or

professional student, $138,500[.]" 34 C.F.R. § 685.203(e)(3). Ordinarily, then, a student borrower's limit is $204,000.

Plaintiff does not dispute Defendants' prior representation that Education "utilized it[s] authority under Section 428H(d) of the Higher Education Act of 1965, to increase Plaintiff's aggregate unsubsidized loan limits for high-cost programs of study to $224,000," Defs. Mem. (ECF No. 56) at 4 n.3, such as the graduate health professional program in which Plaintiff had enrolled, Defs. Mem. at 4. Based on materials in the Appendix, the Court concludes that Plaintiff's aggregate outstanding principal balance is $224,000.

Defendants count the following graduate loans, all unsubsidized, towards Plaintiff's aggregate outstanding principal balance:

- Loan 36 $ 11,548
- Loan 37 6,111
- Loan 38 6,271
- Loan 39 1,755
- Loan 40 20,500
- Loan 41 20,500
- Loan 42 6,991
- Loan 43 13,982
- Loan 44 20,973
- Loan 45 30,125
- Loan 46 32,265
- Loan 47 383[2]

*See* Appendix at 8-11. The aggregate outstanding principal balance for Plaintiff's graduate school loans is $171,788. With respect to Plaintiff's undergraduate loans, Defendants count the following *unsubsidized* loans towards the aggregate outstanding principal balance:

- Loan 7 $ 4,000
- Loan 16 5,706
- Loan 17 294
- Loan 19 4,688

[2] This final amount is recorded as a pending disbursement of either $383, *see* Santore Decl. ¶ 8, or $384, *see* Appendix at 11-12.

- Loan 20 1,580
- Loan 23 3,000
- Loan 25 3,000
- Loan 31 6,560

Appendix at 2-4. The unsubsidized loan amount is $28,828. Lastly, Defendants count the following *subsidized* undergraduate loans towards Plaintiff's aggregate outstanding principal balance:

- Loan 6 $ 2,625
- Loan 8 2,624
- Loan 11 1,312
- Loan 12 566
- Loan 15 3,500
- Loan 18 3,500
- Loan 21 1,750
- Loan 22 1,750
- Loan 24 1,750
- Loan 30 3,623

*See* Appendix at 2-3, 5-7. The aggregate outstanding principal balance of Plaintiff's subsidized undergraduate loans is $23,000. Excluded from the loan limit calculation are loans, the aggregate outstanding balance of which totals $25,246, designated "Consolidated Loans, Unallocated." *Id.* at 12.[3]

Plaintiff engages in a lengthy discussion of lawsuits in this and other federal district courts regarding Education's alleged failure to maintain accurate loan records, *see, e.g.,* Pl. Opp. to App'x at 21-25, NSLDS errors, *see, e.g., id.* at 25-26, errors for which loan servicers allegedly are responsible, *see id.* at 30-35, and alleged tampering with student loan records, *see id.* at 35-37. He

---

[3] Santore explains that a borrower's aggregate outstanding principal balance "includes portions of consolidation loans attributable to the disbursements on the loans . . . repaid through consolidation" and excludes "'unallocated' amounts . . . attributable to loans that cannot be traced." Santore Decl. ¶ 6. Plaintiff's concern that Defendants cannot link a consolidation loan to every underlying loan is puzzling. Exclusion of these principal balances works in Plaintiff's favor. Had Defendants counted the "unallocated" loans, it appears, Plaintiff would have reached his maximum aggregate outstanding principal balance sooner.

argues that conduct on the part of Education and NSLDS as alleged in other lawsuits is sufficient to cast doubt on Defendants' data and calculation. *See, e.g., id.* at 21 (arguing that settlement of civil action in Northern District of California establishes "Education's systems for processing borrower claims and maintaining accurate loan records were fundamentally inadequate"), 24 (citing cases for the proposition "that federal courts—including this Court—have repeatedly recognized that NSLDS data errors are cognizable and that borrowers may sue when those errors cause harm"), 31 (attributing to "nine different loan servicers over three decades," some of which "were removed from the federal program for misconduct, false claims, and financial failure," NSLDS" inability to "trace $25,246"). While there may have been settlement agreements and rulings favoring student loan borrowers in other cases, Plaintiff does not represent he is a party to any of them. Nor does Plaintiff establish that NSLDS and Education committed the same offenses here as have been alleged or proven in the other cases.

## IV. CONCLUSION

Plaintiff fails to demonstrate that Defendants' final agency determination – that he has reached his maximum loan limit – is arbitrary and capricious. The Court GRANTS summary judgment for Defendants. An Order is issued separately.

DATE: November 9, 2026

TANYA S. CHUTKAN
United States District Judge